Hillsborough
No. 91-118

THE STATE OF NEW HAMPSHIRE

v.

MATTHEW WOITKOWSKI

August 27, 1992

*John P. Arnold,* attorney general (*Geoffrey J. Ransom,* attorney, on the brief) by brief for the State.

*James E. Duggan*, chief appellate defender, of Concord, by brief for the defendant.

HORTON, J. The defendant, Matthew Woitkowski, was convicted by a jury of armed robbery. On appeal, he argues that the Superior Court (*Dalianis*, J.) erroneously admitted into evidence the holdup note used in the robbery due to gaps in the chain of custody. We affirm.

At approximately 3:30 p.m. on October 20, 1989, the defendant entered the Lingerie Outlet in Manchester and placed a holdup note demanding money on the counter. The note, written in blue ink on yellow lined paper which was unevenly torn along the bottom portion, stated: "This is a hold up give me all the money in thes [*sic*] register." After reading the note, Lisa Lacroix, one of the two employees working at the time, handed the defendant approximately $200 in cash. The two store employees were able to pick the defendant's photograph out of an array of pictures and positively identify him as the culprit. Based upon this identification, the defendant was arrested two days later. At trial, the State introduced expert testimony matching the defendant's fingerprints and handwriting to the holdup note.

On appeal, the defendant argues that the holdup note should not have been admitted into evidence because the State failed to sufficiently establish its chain of custody in violation of New Hampshire Rule of Evidence 901(a). Specifically, he contends that there are four gaps in the chain because: (1) the evidence officer was not able to identify the holdup note at trial; (2) the detective who sent the holdup note to Concord for analysis prepared the transmittal forms without actually seeing the note; (3) the transport officer testified that he had never seen the note; and (4) the note was transported by an unspecified number of individuals at the FBI laboratory, none of whom testified at trial. The State asserts that there was sufficient evidence to demonstrate that the note was traceable to the defendant; namely, that the unique features of the note obviated the need for exacting testimony tracing the chain of custody, and even if not unique, the note was sufficiently authenticated to permit its introduction into evidence.

We agree with the State. Rule 901(a) provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." We recently held:

> "The State need only demonstrate a rational basis from which to conclude that the exhibit did, in fact, belong to the defendant. The contested evidence, if otherwise relevant, should be admitted once a prima facie case has been made on the issue [of authentication]. Once the evidence is admitted, the rest is up to the jury."

*State v. Reid*, 135 N.H. 376, 383, 605 A.2d 1050, 1054 (1992) (citations and quotations omitted). Although breaks in the chain of custody may be crucial to the issue of authentication when the evidence is fungible, such as white powder thought to be cocaine, where authentication is based on unique identification, the chain of custody, at best, is relegated to a jury issue.

A review of the record below discloses facts that may support a claim of gaps in the chain of custody. The record also discloses that the holdup note is self-identifying; it was written on a torn piece of yellow paper, in the defendant's handwriting, and contained his fingerprints. *See United States v. Abreau*, 952 F.2d 1458, 1467 (1st Cir. 1992) ("evidence in question properly admitted if it is readily identifiable by a unique feature or other identifying mark"); *United States v. Gay*, 774 F.2d 368, 374 (10th Cir. 1985) (factors to examine in reviewing chain of custody include the nature of the evidence). The FBI handwriting analyst testified that "[i]t's my opinion, without a doubt, that the note was written by Matthew Woitkowski." The FBI fingerprint analyst testified that he was "absolutely certain" that fingerprints on the holdup note were made by the defendant.

■ Further, the record indicates that the holdup note was directly traceable to the crime. Officer Stankiewicz, the responding police officer, identified the note introduced at trial as the one he seized at the scene. In addition, Ms. Lacroix, the store employee, and Ms. Nanette Noonan, the owner of the store, each identified the note at trial as the one they had seen on the day of the robbery.

There was a rational basis from which to conclude that the holdup note was written by the defendant and used in the crime. It was, therefore, within the trial court's discretion to admit it into evidence.

*Affirmed.*

All concurred.